PRECEDENTIAL


UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 10-1598
_____

UNITED STATES OF AMERICA

v.

JERMAINE ANTWON WARREN,
                                        Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 1-08-cr-00046-001)
District Judge:  The Honorable Sean J. McLaughlin

_____

ARGUED OCTOBER 20, 2010

BEFORE:  HARDIMAN, GREENAWAY, JR., and
NYGAARD, Circuit Judges.

(Filed: April 21, 2011)

Adam B. Cogan, Esq. (Argued)
One Northgate Square
Greensburg, PA 15601

Counsel for Appellant

Robert L. Eberhardt, Esq. (Argued)
Office of the United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219

Counsel for Appellee

_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

Warren was indicted on charges of intent to distribute fifty or more grams of crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii), and possession of a firearm by a person previously convicted of a felony in violation of 18 U.S.C. § 922(g)(1). He filed a pretrial motion to, *inter alia*, suppress evidence allegedly obtained in violation of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 471 (1966). The District Court granted Warren's motion in part, as to statements Warren made at his home to

his state parole agent, but denied it as to statements Warren made at the police station after receiving the *Miranda* warning. Warren appeals this ruling. We will affirm.

Warren later entered into a plea agreement in which he pleaded guilty to the drug charge. In this agreement, the government states that it will refrain from filing, pursuant to 21 U.S.C. § 851, an information to increase the penalty based upon a prior conviction. On appeal, Warren contends that the government breached this provision of the agreement. We will dismiss the breach of plea agreement claim.

I.

We will first address the *Miranda* issue.[1] At the police station, Warren signaled that he wished to talk. The police officer's testimony at the suppression hearing gives an account of what happened next.

> I told [Warren] that he had the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to an attorney. If you cannot afford to hire an attorney, one will be appointed to represent you without charge

---

[1] "This Court reviews the District Court's denial of a motion to suppress for clear error as to the underlying factual findings and exercises plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002).

> before any questioning if you
> wish. Should you decide to talk
> to me, you can stop the
> questioning any time.

Suppression Hearing 12, ECF No. 60. The record makes clear that the officer did not read this warning from a card, but rather recited it from memory. Warren does not challenge the accuracy of the officer's testimony. Instead, Warren argues that the officer's testimony evinces a deficient *Miranda* warning because it failed to advise him of his right to an attorney after questioning commenced.

The Supreme Court stated in *Miranda*, that authorities are obligated to advise a person taken into custody of "the right to consult with a lawyer and to have the lawyer with him during interrogation." *Miranda*, 384 U.S. at 471. Yet, in the years since *Miranda,* the Supreme Court has consistently refrained from constructing a particular formula for the warning. In *Duckworth,* the Court held the following.

> Reviewing courts are not required
> to examine *Miranda* warnings as
> if construing a will or defining the
> terms of an easement. The
> inquiry is simply whether the
> warnings reasonably "conve[y] to
> [a suspect] his rights as required
> by *Miranda*."

*Duckworth v. Eagan*, 492 U.S. 195, 203 (1989) (quoting *California v. Prysock*, 453 U.S. 355, 361 (1981)). The Court

4

recently reaffirmed this standard in *Florida v. Powell*, 130 S. Ct. 1195, 1198 (U.S. 2010).[2]

After Powell was arrested, but before the Tampa, Florida, police questioned him, an officer recited the *Miranda* warning from a pre-printed card. The officer told Powell, *inter alia*, "[y]ou have the right to talk to a lawyer before answering any of our questions" and then that Powell had "the right to use any of these rights at any time you want during this interview." *Id.* at 1197. At issue was whether the lack of any specific reference to Powell's right to an attorney during questioning rendered statements he made during the interview inadmissible. Powell argued that *Miranda* was clear in its requirement that a person in custody must be advised of the right to counsel *during questioning*. He asserted that, by qualifying the language about counsel with the phrase "before answering any of our questions" the warning was deficient because it communicated that his right terminated when questioning began. The Supreme Court disagreed.

*Miranda* requires that a suspect be informed of the right to have counsel present during questioning. *Miranda*, 384 at 471. Yet, as was highlighted in questioning by Justice

---

[2] The warning at issue in *Prysock* was the following. The suspect had "the right to talk to a lawyer before you are questioned, have him present with you while you are being questioned, and all during the questioning . . . ." *Prysock,* 453 U.S. at 356. In *Duckworth*, the police said the following. "[Y]ou have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning." *Duckworth*, 492 U.S. at 198 (italics omitted).

Ginsburg at oral argument, *Miranda* regarded the warning used at that time by the Federal Bureau of Investigation—which did not explicitly state any right to counsel at the time of questioning—as consistent with its holding. Oral Argument at 6:20, *Id.* at 483 (No. 08-1175), *available at* http://www.oyez.org/cases/2000-2009/2009/2009_08_1175. That warning was characterized in *Miranda* as stating the following.

> [The person in custody] is not required to make a statement, that any statement may be used against him in court, that the individual may obtain the services of an attorney of his own choice and . . . that he has a right to free counsel if he is unable to pay.

*Miranda*, 384 U.S. at 483. The Court went on to state that this warning could be "emulated by state and local enforcement agencies." *Id.* at 486. Therefore, it cannot be said that the *Miranda* court regarded an express reference to the temporal durability of this right as elemental to a valid warning. Rather, as the *Powell* decision underscores in quoting *Prysock*, attention must be focused upon whether anything in the warning "'suggested any *limitation* on the right to the presence of appointed counsel different from the clearly conveyed rights to a lawyer *in general*, including the right to a lawyer before [the suspect is] questioned, . . . while [he is] being questioned, and all during the questioning.'" *Powell*, 130 S. Ct. at 1204 (quoting *Prysock*, 453 U.S. at 360-361) (internal quotation marks in *Prysock* omitted) (emphasis added).

6

Powell argued that the warning he received contained such a limitation because it informed him that he had a right to counsel "before questioning." The Court, however, did not regard this language as fatal to the validity of the warning for two reasons. First, the "before" language, which is similar to the language of *Duckworth*, "merely conveyed when Powell's right to an attorney became effective-namely, before he answered any questions at all." *Powell*, 130 S. Ct. at 1205.[3] Including these additional words did not vitiate the essential information given to the suspect that a right to counsel exists. Additionally, the *Powell* court took note of a "catch all" statement included in the warning at issue, to wit: "[you] have the right to use any of these rights at any time you want during this interview." *Id.* at 1201. Therefore, the *Powell* court said, "[i]n combination, the two warnings reasonably conveyed Powell's right to have an attorney present, not only at the outset of interrogation, but at all times." *Id.* at 1205. Elaborating upon its assessment of the term "reasonably conveyed," the Court said the following.

> A reasonable suspect in a custodial setting who has just been read his rights, we believe, would not come to the counterintuitive conclusion that he is obligated, or allowed, to hop in and out of the holding area to

---

[3] The Court also concluded that these words responded merely to a typical question that a suspect might have after receiving a *Miranda* warning: when might counsel be appointed? *Id.* at 1204 (citing *Duckworth*, 492 U.S. at 204).

7

> seek his attorney's advice. Instead, the suspect would likely assume that he must stay put in the interrogation room and that his lawyer would be there with him the entire time.

*Id.* (footnotes omitted). Importantly, the Court concluded that the warning was sufficient because "[n]othing in the words used indicated that counsel's presence *would be restricted* after the questioning commenced." *Id.* at 1205 (emphasis added).

Turning to the warning used in this case, we note that—unlike *Powell*—the police officer warned Warren of his right to counsel without any reference to whether it commenced or ceased at any particular time. Warren was told in a straightforward manner: "[y]ou have the right to an attorney." Therefore, it cannot be said that the instant warning explicitly stated a temporally-limited right to counsel. Yet, in light of *Powell*, we find it necessary to address whether the lack of any express reference to the right to counsel during interrogation, coupled with the lack of a "catch all" statement like that used in *Powell*, undermines the validity of the warning. We conclude that it does not.

As a starting point, it is of interest that the officer's *Miranda* statement on the right to counsel here is remarkably similar to the warning used by the Federal Bureau of Investigation, which was regarded by the *Miranda* court as

8

consistent with its holding. 384 U.S. at 483.[4] As noted earlier, that warning did not make any mention of the right to an attorney during questioning. While not dispositive, this observation is instructive since our analysis turns upon whether the officer's statement in this case "reasonably conveyed" the rights set out in *Miranda*.

Warren asserts that the warning could be reasonably interpreted only as limiting his right to counsel. Unlike *Powell*, Warren offers no rationale for a reasonable person's belief that the clear, unmodified statement "[y]ou have the right to an attorney" would be regarded as time-limited.

We note that the officer did, next, state "[i]f you cannot afford to hire an attorney one will be appointed to represent you without charge before any questioning if you wish." Yet, we do not find that such a statement—referring only to the appointment of pro bono counsel on his behalf—can be reasonably interpreted to modify the prior, unqualified declaration of his general right to counsel.[5]

---

[4] We are aware that the Federal Bureau of Investigation has changed its warning to state that the person in custody has the right to counsel before any questions are asked and also to have counsel present during questioning. *Powell*, 130 S. Ct. at 1206. However, as the *Powell* Court stated, "[t]his advice is admirably informative, but we decline to declare its precise formulation necessary to *Miranda's* requirements. *Id.*

[5] *See United States v. Frankson*, 83 F.3d 79, 82 (4th Cir. 1996). ("Given the common sense understanding that an unqualified statement lacks qualifications, all that police

9

Moreover, it is counterintuitive to conclude from this warning that while the general right to counsel is unrestricted, the right to appointed counsel exists only in the moments prior to questioning and ceases the moment that the interview commences. Again, the officer said: "[i]f you cannot afford to hire an attorney, one will be appointed to represent you without charge *before any questioning if you wish*." Like *Powell* and *Duckworth,* we read the officer's words as indicating merely that Warren's right to pro bono counsel became effective before he answered any questions. *Powell*, 130 S. Ct. at 1205. It does not restrict the right to counsel, but rather addresses when the right to appointed counsel is triggered. *See Duckworth*, 492 U.S. at 204. Taken as a whole, then, the warning reasonably conveys the substance of the rights expressed in *Miranda*.

With that said, as in *Powell*, we do not regard the warning delivered in this case as the "clearest possible"

_____

officers need do is convey the general rights enumerated in *Miranda*."); *U.S. v. Caldwell*, 954 F.2d 496, 502 (8th Cir. 1992), cert. denied, 113 S. Ct. 65 (1992)("When the only claimed deficiency is that of generality, the teaching of *Duckworth* that we are not construing a will or defining the terms of an easement convinces us that we cannot hold the warning in this case amounts to plain error."); *United States v. Adams*, 484 F.2d 357, 361-362 (7th Cir. 1973) (The warning was sufficient in which officers stated that the suspect had "the right to remain silent, right to counsel, and if they haven't got funds to have counsel, that the court will see that they are properly defended.").

10

statement that could be given. *Powell*, 130 S. Ct. at 1205. Moreover, the fact that this exchange occurred in the police station—a setting where a card imprinted with the *Miranda* warning should be readily available—is disconcerting, considering the resources that have been expended to consider a claim that could have been preempted with minimal care and effort. Nonetheless, we examine the warning objectively within the totality of the circumstances. *Id.* From this perspective, we conclude, as in *Powell,* that "[n]othing in the words used indicated that counsel's presence would be restricted after the questioning commenced." *Id*. Therefore, we will affirm the order of the District Court.

## II.

We now turn to the breach of plea agreement claim.[6] Warren admitted to his career offender status at the change of plea hearing, and neither the maximum statutory sentence (life imprisonment) or the Guidelines range attributable to his crack cocaine offense (292 to 365 months) is disputed. [7]

---

[6] In determining whether the Government has breached its plea agreement with a defendant, we apply the de novo standard of review. *United States v. Rivera*, 357 F.3d 290, 293-94 (3d Cir. 2004).

[7] The plea agreement stipulates the following. "JERMAIN ANTWON WARREN and the United States Attorney further understand and agree to the following: 1. The penalty that may be imposed upon JERMAIN ANTWON WARREN is: (a) A term of imprisonment of not less than ten years to a maximum of life . . . ." Plea Agreement § C.1.(a), ECF No. 55. Moreover, at oral argument Warren conceded that the

11

Rather, Warren has argued that the District Court should use the Guidelines relating to a powder cocaine offense, yielding a range—he asserts—of 168 to 210 months.

At the sentencing hearing, the government disagreed with the range stated by Warren noting that, with Warren's career offender status, the applicable range would be 210 to 262 months. Warren alleges that the government's argument constituted breach of the plea agreement, in which the government agreed not to file an information pursuant to 21 U.S.C. § 851.[8] Warren's argument confuses the issue.

It is irrelevant to the breach of plea agreement analysis that the government disagreed with Warren's argument. Warren argued for the application of a powder cocaine Guidelines range. The point of reference here is the undisputed sentencing range applicable to Warren's crack cocaine offense. *See United States v. Whitaker*, 938 F.2d 1551, 1552 (2d Cir. 1991) ("[A] § 851(a)(1) notice is required only where the statutory minimum or maximum penalty under Part D of Title 21 is sought to be enhanced, not where a defendant, by virtue of his criminal history, receives an increased sentence under the Sentencing Guidelines within

_____

Guidelines range of 292 to 365 months was applicable to the crack cocaine offense.

[8] "The United States Attorney agrees not to file an information, pursuant to 21 U.S.C. § 851, stating prior convictions as a basis for increased punishment." Plea Agreement § B.4., ECF No. 55.

the statutory range.").[9]  Warren concedes that the government did not file an information under section 851 to increase the crack cocaine sentence based upon prior convictions. Finally, as a factual matter, the District Court sentenced Warren to 248 months, below the recommended range.

We, therefore, conclude that Warren's assertion of the government's breach of the plea agreement is meritless. Accordingly, we will enforce the appellate waiver provision of the agreement and dismiss this claim.  Plea Agreement § A.8, ECF No. 55.

III.

For the reasons stated above, we will affirm the order of the District Court denying Warren's motion to suppress, and we will dismiss the remaining breach of plea agreement issue.

---

[9] At the sentencing hearing, the District Court considered and rejected Warren's request to use the powder cocaine Guidelines range as the basis to calculate the sentence, stating "even if it were correct, I would consider it under these circumstances to be substantially inadequate, given this Defendant's background."  Sentencing Hearing 39, ECF No. 73. The District Court, instead, determined that the disparity between sentencing for crack cocaine and powder cocaine was appropriately considered, within the District Court's discretion under 18 U.S.C. § 3553(a), as one of a "constellation of factors" to support a mitigative variance from the Guidelines range. *Id.* at 38.

GREENAWAY, JR., <u>Circuit Judge</u>, dissenting in part,[1]

Ernesto Miranda lived an unremarkable life, but his surname stands for what has become one of our most fundamental constitutional rights. Indeed, <u>Miranda</u> has become embedded in our national culture. <u>See</u> <u>Dickerson v. United States</u>, 530 U.S. 428, 443-44 (2000). The majority concludes that a police warning to a suspect in custody, given from memory at a station house, of his "right to an attorney," and right to an appointed attorney "before any questioning" satisfies the <u>Miranda</u> requirement to inform him of his right to counsel at all times throughout questioning. For the reasons that follow, and because I believe that <u>Miranda</u> and the Supreme Court's most recent iterations require more, I respectfully dissent.

<u>Miranda</u> repeatedly emphasizes the importance of informing a suspect in custody of the right to counsel during questioning. It requires, as recognized by the Supreme Court in <u>Florida v. Powell</u>, 130 S.Ct. 1195 (2010), that "as an absolute prerequisite to interrogation," an individual held for questioning "must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation." <u>Miranda v. Arizona</u>, 384 U.S. 436, 469 (1966). The Court found this "right to have counsel present at [an] interrogation . . . indispensable to the protection of the Fifth Amendment privilege." <u>Id.</u> The Court's "aim [wa]s to assure that the individual's right to choose between silence and speech remains unfettered throughout the interrogation

---

[1] I join Part II of the majority opinion, the 21 U.S.C. § 851 analysis, in full.

process." Id. at 471. Thus, the practical right to the presence of an attorney addresses the concern that "[t]he circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege [to remain silent] by his interrogators." Powell, 130 S.Ct. at 1203 (quoting Miranda, 384 U.S. at 469) (internal quotation marks omitted).

As Powell recognized, the Court has not "dictated the words in which the essential information must be conveyed." Id. at 1204. In reviewing Miranda warnings, courts are "not required to examine Miranda warnings as if construing a will or defining the terms of an easement." Duckworth v. Eagan, 492 U.S. 195, 204 (1989). The inquiry, according to Duckworth, California v. Prysock, 453 U.S. 355 (1981), and Powell, "is simply whether the warnings reasonably conve[y] to [a suspect] his rights as required by Miranda." Powell, 130 S.Ct. at 1204 (quoting Duckworth, 492 U.S. at 203) (citations and quotation marks omitted).

In Powell, the Supreme Court's most recent iteration of Miranda, the Court reviewed whether a warning with an explicit temporal limitation on the right to an attorney withstood Miranda's requirements. In rejecting the defendant's argument that the warning, as a whole, failed to convey his continuous right to counsel, the Court held that

> They informed Powell that he had the 'right to talk to a lawyer before answering [their] questions' and 'the right to use any of [his] rights at any time [he] want[ed] during th[e] interview.'

2

> The first statement communicated that Powell could consult with a lawyer before answering any particular question, and the second statement confirmed that he could exercise that right while the interrogation was underway. In combination, the two warnings reasonably conveyed Powell's right to have an attorney present, not only at the outset of the interrogation, but at all times.

Id. at 1204-05 (alterations in original). The Court not only took note of the catch all statement, but also relied on it in combination with the "before" language in concluding that

> In context, however, the term "before" merely conveyed when Powell's right to an attorney became effective—namely, before he answered any questions at all. Nothing in the words used indicated that counsel's presence would be restricted after the questioning commenced.

Id. at 1205. The Court found that the "words used"[2] did not

---

[2] To the extent the majority views the reference in Powell to "the words used" as only alluding to the "right to speak to an attorney before" and not the catch all statement, I disagree with that interpretation. The combination of phrases in

3

indicate that the presence of Powell's counsel would be restricted after the questioning commenced because "[i]nstead, the warning communicated that the right to counsel carried forward to and through the interrogation: Powell could seek his attorney's advice before responding to any of [the officers'] questions and at any time . . . during th[e] interview." Id. at 1205 (internal quotation marks omitted). "The warning" included the catch all statement— "[y]ou have the right to use any of these rights at any time you want during this interview" Id. at 1200. Thus, it appears that if Powell had not been told that he could invoke the rights read to him at any time during questioning, his right to the presence of counsel during the interrogation would not have been reasonably conveyed.

This is the crux of my disagreement with the majority. Powell speaks specifically to the clarity with which the warnings inform the accused of his right to counsel throughout the interrogative process. On its face, an iteration of the warnings with no elucidation on this point cannot be constitutionally sound.

Ultimately, Powell examines language different than that before us. In this case, the police officer, without a Miranda card and from memory, warned Warren of his general right to counsel without reference to whether it commenced or ceased at any particular time. Unlike Powell, Warren did not receive an explicit warning that all of the rights dictated to him could be invoked at any time during the entirety of the interview. Although there is no catch all

Powell made evident that the term "before" was not restrictive and it only conveyed when the right began.

4

statement in Warren's case, <u>Powell</u> stands for the proposition that being told that your right to counsel persists throughout interrogation is at the core of <u>Miranda</u>.

The majority concludes that, in light of <u>Powell</u>, the lack of any express reference to the right to counsel during interrogation, coupled with the lack of a catch all statement like that in <u>Powell</u>, does not undermine the validity of the warning. However, simply because the general right to counsel here does not contain a qualifier does not mean that the warning makes clear that the right to counsel exists both before and *during* questioning. As we look at the application of <u>Miranda</u>, and now <u>Powell</u>, we cannot pare down the constitutional prerequisites with wily veterans of our justice system in mind. "[T]he accused who does not know his rights and therefore does not make a request may be the person who most needs counsel[.]" <u>Powell</u>, 130 S.Ct. at 1210 (Stevens, J., dissenting) (citing <u>Miranda</u>, 384 U.S. at 470-71) (internal quotation marks omitted). Our charge is to make sure the words spoken are plain and not subject to conjecture, intuition, or speculation.

The majority also points to <u>Duckworth</u> and <u>Prysock</u> because in those cases, the Court found that the warnings, in their totality, did not limit the right to appointed counsel. In both cases, the Court looked to the language of the warnings to discern any temporal limitation on the suspect's rights that may have been communicated to him. Although the language used in both is distinguishable, these decisions provide guidance as to what constitutes adequate notice of the right to counsel and its scope.

In <u>Prysock</u>, the Court reviewed a warning that

5

informed the suspect of his right to "have hi[s] [lawyer] present with [him] while . . . being questioned, and all during the questioning[.]" 453 U.S. at 361. The defendant complained that the warning was inadequate because it included "the right to have a lawyer appointed . . . at no cost," id. at 358, but did not explicitly inform him of the right to appointed counsel before questioning. The Court rejected this argument, holding that "nothing in the warnings suggested any limitation of the right to the presence of appointed counsel different from the conveyed rights to a lawyer in general, including the right to a lawyer before [the suspect is] questioned . . . while [he is] being questioned, and all during the questioning." Id. at 360-61.

In Duckworth, the Court similarly found sufficient a warning that informed the suspect of the right "to talk to a lawyer for advice before . . . any questions, and to have him with [the suspect] during questioning" but also stated that a lawyer would be appointed "if and when [the suspect goes] to court." 492 U.S at 198. The Court held that the statements, "in their totality," conveyed the proper warnings because the "if and when" statement did not suggest that only those suspects who go to court would be afforded an attorney, but "simply anticipate[d] [the suspect's] question." Id. at 204-05. In the context of both cases, the warnings reasonably conveyed to the suspect, through their language of the right to counsel *during* questioning, that the right to counsel indeed existed during the time of interrogation.

Although the Court has not "dictated the words in which the essential information must be conveyed," Powell, 130 S.Ct. at 1204, the language used in the Prysock, Duckworth, and Powell is instructive. Each contained

6

language that the suspect could invoke, at any time during questioning, either his right to counsel or all the rights that had been dictated to him (including the right to talk to counsel before questioning). Warren's warning of his "right to an attorney," in context, does not, in my view, reasonably convey to a reasonable person in his position that he has a right to counsel throughout any custodial questioning. Additionally, the notice to Warren that if he could not afford an attorney, one would be appointed to him before questioning does not and cannot be said to have reasonably conveyed that the general right to an attorney continues during questioning.

I believe that <u>Miranda</u> and its progeny compel a finding that the conveyance of a general right to an attorney, without contextual notification that this right exists during questioning, does not meet the requirements of <u>Miranda</u>. Many of our sister Circuits have come to similar conclusions. <u>See, e.g.</u>, <u>United States v. Noti</u>, 731 F.2d 610, 614 (9th Cir. 1984) (the advisement of "the right to have counsel present during questioning . . . is not left to the option of the police; it is mandated by the Constitution.");[3] <u>see also</u>, <u>Powell</u>, 130

---

[3] <u>See also</u> <u>United States v. Tillman</u>, 963 F.2d 137, 140-42 (6th Cir. 1992) (suppressing statements made to police where suspect was told that he had the right to the presence of an attorney, but police "failed to convey to defendant that he had the right to an attorney both before, during and after questioning" and failed to warn that statements could be used against him); <u>United States v. Anthon</u>, 648 F.2d 669, 672-74 (10th Cir. 1981), <u>cert. denied</u>, 454 U.S. 1164 (1981) (finding <u>Miranda</u> warning insufficient where suspect was not advised that "right to counsel encompassed the right to have counsel

S.Ct. at 1212 n.8 (Stevens, J., dissenting) ("I am doubtful that warning a suspect of his 'right to counsel,' without more, reasonably conveys a suspect's full rights under <u>Miranda</u> . . . .").

In my view, telling a defendant that he will be appointed an attorney before questioning if he cannot afford one and that he has the right to an attorney does not reasonably convey his continued right to counsel during questioning. Looking to the entire warning and what it reasonably conveyed, the warning in <u>Powell</u> did not "entirely omi[t] any information <u>Miranda</u> required [the officers] to impart." <u>Id.</u> at 1204 (internal quotation marks and citation omitted). I believe such an omission was made in this case. Because I conclude that the warning here was inadequate and violated Warren's constitutional rights under the Fifth Amendment, I believe that his statements made subsequent to the warning should be suppressed. I would therefore vacate the judgment of conviction and remand to the District Court.

---

present during any questioning," but admitting statement as harmless error); <u>Windsor v. United States</u>, 389 F.2d 530, 533 (5th Cir. 1968) ("Merely telling him that he could speak with an attorney or anyone else before he said anything at all is not the same as informing him that he is entitled to the presence of an attorney during interrogation . . . .").