Justice Ginsburg
delivered the opinion of the Court.
In a pathmarking decision, Miranda v. Arizona, 384 U. S. 436, 471 (1966), the Court held that an individual must be “clearly informed,” prior to custodial questioning, that he has, among other rights, “the right to consult with a lawyer and to have the lawyer with him during interrogation.” The question presented in this case is whether advice that a suspect has “the right to talk to a lawyer before answering any of [the law enforcement officers’] questions,” and that he can invoke this right “at any time... during th[e] interview,” satisfies Miranda. We hold that it does.
I
On August 10, 2004, law enforcement officers in Tampa, Florida, seeking to apprehend respondent Kevin Dewayne Powell in connection with a robbery investigation, entered an apartment rented by Powell’s girlfriend. 969 So. 2d 1060, 1063 (Fla. App. 2007). After spotting Powell coming from a bedroom, the officers searched the room and discovered a loaded nine-millimeter handgun under the bed. Ibid.
The officers arrested Powell and transported him to the Tampa police headquarters. Ibid. Once there, and before asking Powell any questions, the officers read Powell the standard Tampa Police Department Consent and Release Form 310. Id., at 1063-1064. The form states:
*54 “You have the right to remain silent. If you give up the right to remain silent, anything you say can be used against you in court. You have the right to talk to a lawyer before answering any of our questions. If you cannot afford to hire a lawyer, one will be appointed for you without cost and before any questioning. You have the right to use any of these rights at any time you want during this interview.” App. 3. See also 969 So. 2d, at 1064.
Acknowledging that he had been informed of his rights, that he “underst[oo]d them,” and that he was “willing to talk” to the officers, Powell signed the form. App. 3. He then admitted that he owned the handgun found in the apartment. Powell knew he was prohibited from possessing a gun because he had previously been convicted of a felony, but said he had nevertheless purchased and carried the firearm for his protection. See 969 So. 2d, at 1064; App. 29.
Powell was charged in state court with possession of a weapon by a prohibited possessor, in violation of Fla. Stat. Ann. § 790.23(1) (West 2007). Contending that the Miranda warnings were deficient because they did not adequately convey his right to the presence of an attorney during questioning, he moved to suppress his inculpatory statements. The trial court denied the motion, concluding that the officers had properly notified Powell of his right to counsel. 969 So. 2d, at 1064; App. 28. A jury convicted Powell of the gun-possession charge. 969 So. 2d, at 1064.
On appeal, the Florida Second District Court of Appeal held that the trial court should have suppressed Powell’s statements. Id., at 1067. The Miranda warnings, the appellate court concluded, did not “adequately inform [Powell] of his ... right to have an attorney present throughout [the] interrogation.” 969 So. 2d, at 1063. Considering the issue to be “one of great public importance,” the court certified the following question to the Florida Supreme Court:
*55 “Does the failure to provide express advice of the right to the presence of counsel during questioning vitiate Miranda warnings which advise of both (A) the right to talk to a lawyer ‘before questioning’ and (B) the ‘right to use’ the right to consult a lawyer ‘at any time’ during questioning?” Id., at 1067-1068 (some internal quotation marks and some capitalization omitted).
Surveying decisions of this Court as well as Florida precedent, the Florida Supreme Court answered the certified question in the affirmative. 998 So. 2d 531, 532 (2008). “Both Miranda and article I, section 9 of the Florida Constitution,” [1] the Florida High Court noted, “require that a suspect be clearly informed of the right to have a lawyer present during questioning.” Id., at 542. The court found that the advice Powell received was misleading because it suggested that Powell could “only consult with an attorney before questioning” and did not convey Powell’s entitlement to counsel’s presence throughout the interrogation. Id., at 541. Nor, in the court’s view, did the final catchall warning— “[y]ou have the right to use any of these rights at any time you want during this interview” — cure the defect the court perceived in the right-to-counsel advice: “The catch-all phrase did not supply the missing warning of the right to have counsel present during police questioning,” the court stated, for “a right that has never been expressed cannot be reiterated.” Ibid.
Justice Wells dissented. He considered it “unreasonable to conclude that the broad, unqualified language read to Powell would lead a person of ordinary intelligence to believe that he or she had a limited right to consult with an attorney that could only be exercised before answering the first question posed by law enforcement.” Id., at 544. The final sentence of the warning, he stressed, “avoid[ed) the implica *56 tion — unreasonable as it may [have] be[en] — that advice concerning the right of access to counsel before questioning conveys the message that access to counsel is foreclosed during questioning.” Ibid, (internal quotation marks omitted). Criticizing the majority’s “technical adherence to language . . . that has no connection with whether the person who confessed understood his or her rights,” id., at 545, he concluded that “[t]he totality of the warning reasonably conveyed to Powell his continuing right of access to counsel,” id., at 544.
We granted certiorari, 557 U. S. 918 (2009), and now reverse the judgment of the Florida Supreme Court.
II
We first address Powell’s contention that this Court lacks jurisdiction to hear this case because the Florida Supreme Court, by relying not only on Miranda but also on the Florida Constitution, rested its decision on an adequate and independent state ground. Brief for Petitioner 15-23. See Coleman v. Thompson, 501 U. S. 722, 729 (1991) (“This Court will not review a question of federal law decided by a state court if the decision . . . rests on a state law ground that is independent of the federal question and adequate to support the judgment.”). “It is fundamental,” we have observed, “that state courts be left free and unfettered by us in interpreting their state constitutions.” Minnesota v. National Tea Co., 309 U. S. 551, 557 (1940). “But it is equally important that ambiguous or obscure adjudications by state courts do not stand as barriers to a determination by this Court of the validity under the federal constitution of state action.” Ibid.
To that end, we announced, in Michigan v. Long, 463 U. S. 1032, 1040-1041 (1983), the following presumption:
“[W]hen ... a state court decision fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of *57 any possible state law ground is not clear from the face of the opinion, we will accept as the most reasonable explanation that the state court decided the case the way it did because it believed that federal law required it to do so.”
At the same time, we adopted a plain-statement rule to avoid the presumption: “If the state court decision indicates clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent grounds, we, of course, will not undertake to review the decision.” Id., at 1041.[2]
Under the Long presumption, we have jurisdiction to entertain this case. Although invoking Florida’s Constitution and precedent in addition to this Court’s decisions, the Florida Supreme Court treated state and federal law as interchangeable and interwoven; the court at no point expressly asserted that state-law sources gave Powell rights distinct from, or broader than, those delineated in Miranda. See Long, 463 U. S., at 1044.
Beginning with the certified question — whether the advice the Tampa police gave to Powell “vitiate[d] Miranda,” 998 So. 2d, at 532 (internal quotation marks and some capitalization omitted) — and continuing throughout its opinion, the Florida Supreme Court trained on what Miranda demands, *58 rather than on what Florida law independently requires. See, e. g., 998 So. 2d, at 533 (“The issue before this Court is whether the failure to provide express advice of the right to the presence of counsel during custodial interrogation violates the principles espoused in Miranda v. Arizona, 384 U. S. 436.”); id., at 538 (“[T]he issue of [what] Miranda requires ... has been addressed by several of the Florida district courts of appeal.”); id., at 542 (Powell received a “narrower and less functional warning than that required by Miranda.”).[3] We therefore cannot identify, “from the face of the opinion,” a clear statement that the decision rested on a state ground separate from Miranda. See Long, 463 U. S., at 1041 (the state court “need only make clear by a plain statement in its judgment or opinion that the federal cases are being used only for the purpose of guidance, and do not themselves compel the result that the court has reached”).[4] “To avoid misunderstanding, the [Florida] Supreme Court *59 must itself speak with the clarity it sought to require of its State’s police officers.” Ohio v. Robinette, 519 U. S. 33, 45 (1996) (Ginsburg, J., concurring in judgment).
Powell notes that “ ‘state courts are absolutely free to interpret state constitutional provisions to accord greater protection to individual rights than do similar provisions of the United States Constitution.’” Brief for Respondent 19-20 (quoting Arizona v. Evans, 514 U. S. 1, 8 (1995)). See also, e. g., Oregon v. Hass, 420 U. S. 714, 719 (1975); Cooper v. California, 386 U. S. 58, 62 (1967). Powell is right in this regard. Nothing in our decision today, we emphasize, trenches on the Florida Supreme Court’s authority to impose, based on the State’s Constitution, any additional protections against coerced confessions it deems appropriate. But because the Florida Supreme Court’s decision does not “indieat[e] clearly and expressly that it is alternatively based on bona fide separate, adequate, and independent [state] grounds,” Long, 463 U. S., at 1041, we have jurisdiction to decide this case.
III
A
To give force to the Constitution’s protection against compelled self-incrimination, the Court established in Miranda “certain procedural safeguards that require police to advise criminal suspects, of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.” Duckworth v. Eagan, 492 U. S. 195, 201 (1989). Intent on “giv[ing] concrete constitutional guidelines for law enforcement agencies and courts to follow,” 384 U. S., at 441-442, Miranda prescribed the following four now-familiar warnings:
“[A suspect] must be warned prior to any questioning [1] that he has the right to remain silent, [2] that anything he says can be used against him in a court of law, [3] that he has the right to the presence of an attorney, *60 and [4] that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.” Id., at 479.
Miranda’s third warning — the only one at issue here — addresses our particular concern that “[t]he circumstances surrounding in-custody interrogation can operate very quickly to overbear the will of one merely made aware of his privilege [to remain silent] by his interrogators.” Id., at 469. Responsive to that concern, we stated, as “an absolute prerequisite to interrogation,” that an individual held for questioning “must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation.” Id., at 471. The question before us is whether the warnings Powell received satisfied this requirement.
The four warnings Miranda requires are invariable, but this Court has not dictated the words in which the essential information must be conveyed. See California v. Prysock, 453 U. S. 355, 359 (1981) (per curiam) (“This Court has never indicated that the rigidity of Miranda extends to the precise formulation of the warnings given a criminal defendant.” (internal quotation marks omitted)); Rhode Island v. Innis, 446 U. S. 291, 297 (1980) (safeguards against self-incrimination include “Miranda warnings... or their equivalent”). In determining whether police officers adequately conveyed the four warnings, we have said, reviewing courts are not required to examine the words employed “as if construing a will or defining the terms of an easement. The inquiry is simply whether the warnings reasonably ‘conve[y] to [a suspect] his rights as required by Miranda.’” Duck-worth, 492 U. S., at 203 (quoting Prysock, 453 U. S., at 361).
B
Our decisions in Prysock and Duckworth inform our judgment here. Both concerned a suspect’s entitlement to ade *61 quate notification of the right to appointed counsel. In Pry-sock, an officer informed the suspect of, inter alia, his right to a lawyer's presence during questioning and his right to counsel appointed at no cost. 453 U. S., at 356-357. The Court of Appeals held the advice inadequate to comply with Miranda because it lacked an express statement that the appointment of an attorney would occur prior to the impending interrogation. See 453 U. S., at 358-359. We reversed. Id., at 362. “[NJothing in the warnings,” we observed, “suggested any limitation on the right to the presence of appointed counsel different from the clearly conveyed rights to a lawyer in general, including the right to a lawyer before [the suspect is] questioned,... while [he is] being questioned, and all during the questioning.” Id., at 360-361 (internal quotation marks omitted).
Similarly, in Duckworth, we upheld advice that, in relevant part, communicated the right to have an attorney present during the interrogation and the right to an appointed attorney, but also informed the suspect that the lawyer would be appointed “if and when [the suspect goes] to court.” 492 U. S., at 198 (emphasis deleted; internal quotation marks omitted). “The Court of Appeals thought th[e] ‘if and when you go to court' language suggested that only those accused who can afford an attorney have the right to have one present before answering any questions.” Id., at 203 (some internal quotation marks omitted). We thought otherwise. Under the relevant state law, we noted, “counsel is appointed at [a] defendant’s initial appearance in court.” Id., at 204. The “if and when you go to court” advice, we said, “simply anticipate[d]” a question the suspect might be expected to ask after receiving Miranda warnings, i. e., “when [will he] obtain counsel.” 492 U. S., at 204. Reading the “if and when” language together with the other information conveyed, we held that the warnings, “in their totality, satisfied Miranda.” Id., at 205.
*62 We reach the same conclusion in this case. The Tampa officers did not “entirely omi[t],” post, at 72, any information Miranda required them to impart. They informed Powell that he had “the right to talk to a lawyer before answering any of [their] questions" and “the right to use any of [his] rights at any time [he] want[ed] during th[e] interview." App. 3. The first statement communicated that Powell could consult with a lawyer before answering any particular question, and the seeond statement confirmed that he could exercise that right while the interrogation was underway. In combination, the two warnings reasonably conveyed Powell’s right to have an attorney present, not only at the outset of interrogation, but at all times.[5]
To reach the opposite conclusion, i. e., that the attorney would not be present throughout the interrogation, the suspect would have to imagine an unlikely scenario: To consult counsel, he would be obliged to exit and reenter the interrogation room between each query. A reasonable suspect in a custodial setting who has just been read his rights, we believe, would not come to the counterintuitive conclusion that he is obligated, or allowed, to hop in and out of the holding area to seek his attorney’s advice.[6] Instead, the suspect *63 would likely assume that he must stay put in the interrogation room and that his lawyer would be there with him the entire time.[7]
The Florida Supreme Court found the warning misleading because it believed the temporal language — that Powell could “talk to a lawyer before answering any of [the officers’] questions” — suggested Powell could consult with an attorney only before the interrogation started. 998 So. 2d, at 541. See also Brief for Respondent 28-29. In context, however, the term “before” merely conveyed when Powell’s right to an attorney became effective — namely, before he answered any questions at all. Nothing in the words used indicated that counsel’s presence would be restricted after the questioning commenced. Instead, the warning communicated that the right to counsel carried forward to and through the interrogation: Powell could seek his attorney’s advice before responding to “any of [the officers’] questions” and “at any time . .. during th[e] interview.” App. 3 (emphasis added). Although the warnings were not the clearest possible formulation of Miranda’s right-to-counsel advisement, they were sufficiently comprehensive and comprehensible when given a commonsense reading.
Pursuing a different line of argument, Powell points out that most jurisdictions in Florida and across the Nation expressly advise suspects of the right to have counsel present both before and during interrogation. Brief for Respondent 41-44. If we find the advice he received adequate, Powell suggests, law enforcement agencies, hoping to obtain uninformed waivers, will be tempted to end-run Miranda by amending their warnings to introduce ambiguity. Brief for *64 Respondent 50-53. But as the United States explained as amicus curiae in support of the State of Florida, “law enforcement agencies have little reason to assume the litigation risk of experimenting with novel Miranda formulations,” Brief for United States 6; instead, it is “desirable police practice” and “in law enforcement’s own interest” to state warnings with maximum clarity, id., at 12. See also id., at 11 (“By using a conventional and precise formulation of the warnings, police can significantly reduce the risk that a court will later suppress the suspect’s statement on the ground that the advice was inadequate.”).
For these reasons, “all.. . federal law enforcement agencies explicitly advise . . . suspect[s] of the full contours of each [Miranda] right, including the right to the presence of counsel during questioning.” Id., at 12. The standard warnings used by the Federal Bureau of Investigation are exemplary. They provide, in relevant part: “You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during questioning.” Ibid., n. 3 (internal quotation marks omitted). This advice is admirably informative, but we decline to declare its precise formulation necessary to meet Miranda!s requirements. Different words were used in the advice Powell received, but they communicated the same essential message.
* * *
For the reasons stated, the' judgment of the Supreme Court of Florida is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

It is so ordered.

 Article I, §9 of the Florida Constitution states that “[n]o person shall ... be compelled in any criminal matter to be a witness against oneself”

 Dissenting in Michigan v. Long, 463 U. S. 1032, 1065 (1983), Justice Stevens did not urge, as he now does, inspection of state-court decisions to count the number of citations to state and federal provisions and opinions, or heroic efforts to fathom what the state court really meant. See post, at 66-70 (dissenting opinion). Instead, his preferred approach was as dear as the Court’s. In lieu of “presuming that adequate state grounds are not independent unless it dearly appears otherwise,” he would have “presum[ed] that adequate state grounds are independent unless it clearly appears otherwise.” Long, 463 U. S., at 1066; see post, at 65-66, n. 1. Either presumption would avoid arduous efforts to detect, case by case, whether a state ground of decision is truly “independent of the [state court’s] understanding of federal law.” Long, 463 U. S., at 1066. Today, however, the dissent would require this Court to engage in just that sort of inquiry.

 Justice Stevens suggests that these statements refer to Miranda only in a “generic” sense to mean “the warnings suspects must be given before interrogation.” Post, at 70. This explanation fails to account for the Florida Supreme Court's repeated citations to the opinion in Miranda. In context, it is obvious that the court was attempting to home in on what that opinion — which, of course, interpreted only the Federal Constitution and not Florida law — requires. See, e. g., 998 So. 2d 531, 533, 534, 537, 538, 539,540, 541, 542 (2008).

 Justice Stevens agrees that the Florida Supreme Court’s decision is interwoven with federal law, post, at 70, and lacks the plain statement contemplated by Long, post, at 66. Nevertheless, he finds it possible to discern an independent state-law basis for the decision. As Long makes clear, however, “when... [the] state court decision fairly appears to ... be interwoven with .. . federal law,” the only way to avoid the jurisdictional presumption is to provide a plain statement expressing independent reliance on state law. 463 U. S., at 1040. It is this plain statement that makes “the adequacy and independence of any possible state law ground ... clear from the face of the opinion.” Id., at 1040-1041. See also Ohio v. Robinette, 519 U. S. 33, 44 (1996) (Ginsbubg, J., concurring in judgment) (“Long governs even when, all things considered, the more plausible reading of the state court’s decision may be that the state court did not regard the Federal Constitution alone as a sufficient basis for its ruling.”).

 Justice Stevens asserts that the Court today approves, for “the first time[,]... a warning which, if given its natural reading, entirely omitted an essential element of a suspect’s rights.” Post, at 72. See also post, at 75-76 (“[T]he warning entirely failed to inform [Powell] of the separate and distinct right ‘to have counsel present during any questioning.’”). We find the warning in this case adequate, however, only because it communicated just what Miranda prescribed. Justice Stevens ascribes a different meaning to the warning Powell received, but he cannot credibly suggest that the Court regards the warning to have omitted a vital element of Powell’s rights.

 It is equally unlikely that the suspect would anticipate a scenario of this order: His lawyer would be admitted into the interrogation room each time the police ask him a question, then ushered out each tíme the suspect responds.

 Although it does not bear on our decision, Powell seems to have understood the warning this way. The following exchange between Powell and his attorney occurred when Powell testified at his trial:
“Q. You waived the right to have an attorney present during your questioning by detectives; is that what you’re telling this jury?
“A. Yes.” App. 80.