MONACO, C.J.
The sole issue on this appeal is whether the trial court erred in granting the motion of the defendant, Junior Joseph, to suppress statements that he made to law enforcement officers. More particularly, the trial court was tasked with determining whether the Miranda[1] warnings given to the appellant in both Creole and English were inadequate, thus rendering the waiver of his Fifth Amendment rights involuntary. Although the trial court found for the defense in this respect, we reverse.
The arrest affidavit indicated that the Orlando police were sent to investigate a purported shooting by an individual of his girlfriend. The shooter was then alleged to have left the scene on foot. The victim, who was six to eight months pregnant at the time, was found after having been shot on the landing of an apartment complex. Although she was transported to a hospital, she was later pronounced dead.
*499 Mr. Joseph ran from the apartment complex, but was soon apprehended by the police. According to the documentation before the trial court, Mr. Joseph resisted arrest and attempted to shoot the arresting officer with a handgun. He was rapidly apprehended in a dumpster where he was attempting to hide.
After Mr. Joseph was transported to a police station he was read his Miranda rights in English by Detective Campbell on two occasions. Shortly after he was initially advised in English, another officer, Detective Verret, who was conversant in Creole, was called in as a precaution to translate the Miranda warnings into Creole and to readvise Mr. Joseph of his rights in that language. Mr. Joseph then agreed to talk to the officers and quickly admitted both to firing the shots that struck the victim, and to leaving the scene. The appellant asserted, however, that he was attempting to throw the handgun after being stopped by the pursuing officer, even though the officer thought that he was pointing the weapon at him. The interview was recorded and a transcript was provided to the trial court.
In due course Mr. Joseph was indicted for first degree murder, attempted first degree murder with a firearm, attempted first degree murder with a firearm on a law enforcement officer, and aggravated assault with a firearm on a law enforcement officer. Mr. Joseph filed a motion to suppress statements he made to the officers. The motion discussed the double reading of Fifth Amendment rights to Mr. Joseph, but argued that a discrepancy occurred when Mr. Joseph was advised with respect to his right to talk to a lawyer. In that regard the following conversation (with appropriate translation) took place between Mr. Joseph and the detectives:
Detective Campbell: You have the right to talk to a lawyer before and during questioning, do you understand?
Detective Verret: You have the right to talk with a lawyer before and after they ask you questions, do you understand? Mr. Joseph: Okay.
Detective Campbell: If you cannot afford a lawyer and want one, one will be provided for you before questioning, without charge. Do you understand?
Detective Verret: If you can’t ... if you don’t have money to pay an attorney and you need one, you want one, they’ll give you an attorney before they ask you questions without them charging ... charging you any money, understand?
Mr. Joseph: Okay.
Mr. Joseph posits that the Miranda warning given in Creole did not inform him that he could have an attorney present “during questioning,” as is required. He cited to State v. Powell, 998 So.2d 531 (Fla.2008), where the Florida Supreme Court affirmed a decision of the Second District Court of Appeal holding the Miranda warning was inadequate if the defendant was not informed of his right to have counsel present during questioning. In the transcript of the interview attached to the motion to suppress, Mr. Joseph acknowledged that he understood “some” English and could read English.
At the motion hearing Detective Campbell testified that he did not think Joseph fully understood his Miranda rights the first time they were given in English, so. he called for a translator. He noted that he again gave the Miranda warnings in English off his card, and then the translator repeated them in Creole. Another witness, a housekeeping manager of a hotel under whom Mr. Joseph worked for six to eight months, testified that she always spoke English to the appellant during the workday, and that he always un *500 derstood. Moreover, Mr. Joseph only-spoke English to her. The director of human resources at the hotel where Mr. Joseph was employed related that the appellant’s employment paperwork indicated that he preferred to receive communications in English. Although Mr. Joseph also wrote the word “Creole” next to the line as well, the witness testified that it was apparent that Mr. Joseph was able to read and understand all of the employment paperwork in English.
The defense argued that although Mr. Joseph was properly advised of his Miranda warnings in English, he was mi-sadvised of them in Creole. The State responded that there was virtually no contradiction between the two versions. The trial court, however, granted the motion to suppress, holding that the translation in Creole did not adequately advise the defendant of his right to talk to an attorney or have an attorney present during questioning. The State timely filed this appeal.
Unquestionably, for the purpose of evidentiary admission of confessions by criminal defendants the State bears the burden to establish by a preponderance of the evidence that the confession was freely and voluntarily given. See Miller v. State, 42 So.3d 204 (Fla.2010). Pursuant to Miranda, the Fifth Amendment rights that police officers must convey to a suspect prior to a custodial interrogation to ensure the voluntariness of a confession are that: (1) the suspected person has a right to remain silent; (2) that anything the suspect says will be used against him or her in court; (3) that he or she has a right to the help of a lawyer; and (4) that if the person cannot pay for a lawyer, one will be appointed for him or her. It is the third requirement that is implicated in this case.
The Florida Supreme Court unpacked what the term “lawyer’s help” means many years ago in Traylor v. State, 596 So.2d 957, 966 n. 13 (Fla.1992). There, the court held that a criminal suspect has the right to consult with a lawyer before being interrogated and to have the lawyer present during interrogation. Obviously, the issue before us is whether Mr. Joseph was sufficiently apprised of his right to have legal assistance during the time that he was interrogated by law enforcement.
The Florida Supreme Court has noted, however, that there is no “talismanic” incantation required to ensure the warnings are sufficiently conveyed. See Anderson v. State, 863 So.2d 169, 182 (Fla.2003), cert. denied, 541 U.S. 940, 124 S.Ct. 1662, 158 L.Ed.2d 363 (2004). Rather, the inquiry is simply whether the warnings reasonably conveyed to the suspect his or her rights as required by Miranda. In other words, the crucial test is whether the words in the context used, considering age, background and intelligence of the individual being interrogated, impart a clear, understandable warning of all of his or her rights. See Coyote v. United States, 380 F.2d 305, 308 (10th Cir.), cert. denied, 389 U.S. 992, 88 S.Ct. 489, 19 L.Ed.2d 484 (1967).
Recently, the decision of the Florida Supreme Court in Powell was reversed, at least in part, by the United States Supreme Court in Florida v. Powell, — U.S. -, 130 S.Ct. 1195, — L.Ed.2d - (2010), which held that Miranda is satisfied when a suspect is informed that he has the right to talk to a lawyer before answering any of the law enforcement officer’s questions and that he can invoke this right at any time during the interview. See State v. Owens, 41 So.3d 352 (Fla. 5th DCA 2010); see also Rigterink v. State, 2 So.3d 221, 254 (Fla.), cert. granted, judgment vacated by Florida v. Rigterink, — U.S. -, 130 S.Ct. 1235, 176 L.Ed.2d 175 (2010).
*501 In the present case the trial court found that Mr. Joseph relied on the Creole translation in an attempt to understand the Miranda warnings. Indeed, there are facts that suggest that Mr. Joseph may not have fully understood the valid English version of the warnings that were first given to him.[2] Thus, we examine whether the translation satisfied Miranda, in light of Powell.
Mr. Joseph was advised by the Creole translator that he had a right to talk to an attorney “before and after they ask you questions.” In Powell, the United States Supreme Court realized that the totality of the warnings accorded to the defendant reasonably conveyed to him his continuing right of access to counsel throughout the interrogation.
They informed Powell that he had “the right to talk to a lawyer before answering any of [their] questions” and “the right to use any of [his] rights at any time [he] want[ed] during th[e] interview.”
Powell, 130 S.Ct. at 1204. In other words, the warning communicated that Powell could consult with a lawyer before answering any particular question, and the catchall statement confirmed that he could exercise that right while the interrogation was underway. Thus, in combination, the two warnings reasonably conveyed the defendant’s right to have an attorney present, not only at the outset of the interrogation, but during the interrogation, as well.
During the course of its discussion of the adequacy of the warnings, the Powell majority applied something of a common sense test to its conclusion that the warning and the catch-all phrase were constitutionally sufficient. It noted that,
To reach the opposite conclusion, i.e., that the attorney would not be present throughout the interrogation, the suspect would have to imagine the counter-intuitive and unlikely scenario that, in order to consult counsel, he would be obliged to exit and reenter the interrogation room between each query.
Powell, 130 S.Ct. at 1199.
The issue, thus, evolves into whether the combination of the warnings given to Mr. Joseph would reasonably convey to him that he could exercise his right to consult with counsel during the interview. We think the warning sufficiently transmits that information at least as efficiently as the catch-all phrase highlighted in the federal Powell decision. Using the common sense approach suggested by the United States Supreme Court, we might note that to conclude that the Creole language warning under consideration is inadequate it would have to be understood to allow Mr. Joseph to talk to a lawyer only before a question or questions are asked; then to compel him to answer the question out of the presence of the lawyer; then to accord him an opportunity talk to the lawyer again after the question is answered. Presumably, he could exercise this right before and after each question is asked. What would be the point, however, of having a right to talk to the lawyer after the question or questions are already answered? We think that common sense dictates a conclusion that the words used sufficiently conveyed the idea that Mr. Joseph could have counsel present during the interrogation.
*502 While the translation of Mr. Joseph’s Miranda rights into Creole could unquestionably have been more precise, we think it reasonably and adequately conveyed to him that he could have a lawyer before and during any interrogation. See Anderson. Accordingly, we reverse the order suppressing the confession of Mr. Joseph and remand to the trial court for further proceedings consistent with this opinion.
REVERSED and REMANDED.
GRIFFIN and SAWAYA, JJ., concur.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. We recognize that there is authority to the effect thát if warnings are given in two versions (e.g., written and oral), and one version is incomplete, courts have held that so long as one of the versions is complete and correct, the warnings are sufficient. Wayne R. LaFave, 2 Criminal Procedure § 6.8(c) (3d Ed. 2007)(at p. 810). Because of the disposition in this case, however, there is no need to address this issue.