# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  52239-0-II |
| Respondent, | UNPUBLISHED OPINION |
| v. | |
| ZACHARY RYAN PARKER, | |
| Appellant. | |

GLASGOW, J. — Twelve-year-old JZ spent the night with twenty-four-year-old Zachary Parker, a friend of JZ's family, at Parker's apartment.  Parker twice engaged in oral sexual intercourse with JZ.  After JZ disclosed the incident, Parker was arrested and charged with two counts of second degree child rape and one count of commercial sex abuse of a minor.

Before trial, the trial court conducted a CrR 3.5 hearing to determine the admissibility of Parker's statements to arresting officers.  The trial court found Parker's statements admissible but did not enter the required written findings of fact and conclusions of law supporting its ruling.  The jury acquitted Parker of commercial sex abuse of a minor but convicted him of both counts of second degree child rape.

Parker appeals his convictions, asserting that the trial court failed to enter findings of fact and conclusions of law supporting its CrR 3.5 ruling.  He also contends that the police failed to

provide him with complete *Miranda*[1] warnings and the trial court erred by failing to suppress his statements to police. The State concedes that it did not present evidence at the CrR 3.5 hearing sufficient to show that Parker was provided with adequate *Miranda* warnings and, thus, the trial court erred by admitting the statements. But the State argues that the error was harmless beyond a reasonable doubt.

The trial court entered the required CrR 3.5 findings while this appeal was pending, and Parker was not prejudiced by the late entry. Thus, Parker's contention regarding entry of written findings and conclusions is moot and reversal on that basis is not warranted. We accept the State's concession that the trial court erred by admitting Parker's statements to police at trial, but we conclude that the error was harmless beyond a reasonable doubt. Accordingly, we affirm Parker's second degree child rape convictions.

FACTS

A.      Background

Parker was a friend of JZ's family for several years and would often take JZ on fishing trips or to his apartment to play video games. JZ occasionally spent the night at Parker's apartment, which Parker shared with his sister.

In December 2016, Parker and his sister attended a party with JZ's family. JZ was 12 years old at the time. JZ asked his parents if he could go to Parker's apartment to play video games and spend the night; JZ's parents agreed, and Parker drove JZ to his apartment.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

According to JZ, Parker's sister was the only other person at the apartment and was in her bedroom the entire night. At around 1:00 a.m., Parker showed JZ pornographic photographs and videos. Parker offered JZ $25 and a video game console in exchange for JZ performing oral sex. JZ acquiesced but stopped after a few seconds because he felt uncomfortable. Parker then began performing oral sex on JZ, and JZ again moved away because he felt uncomfortable. JZ went to the living room to play video games and eventually went to sleep.

When JZ woke up the following afternoon, Parker gave him $25 and took him home. JZ told his parents that Parker gave him $25 for cleaning his apartment. Later that month, JZ's parents caught him performing oral sex on a younger boy. As a result, JZ told his parents about his encounter with Parker, and JZ's parents reported the allegations to the police.

Later that same day, Clark County Sheriff's Detective Andrew Kennison went to Parker's apartment to ask about JZ's allegations. Kennison repeatedly knocked on Parker's door and rang his doorbell, but no one answered. After returning to his patrol car, Kennison saw Parker exit his apartment through the back door. Kennison detained Parker and confronted him about JZ's allegations. Parker initially refused to talk with Kennison, but then changed his mind.

Parker told Kennison that JZ had spent the night at his apartment, but denied that JZ was in his bedroom on the night of the alleged incidents. Parker also denied JZ's allegations. Parker said that his boyfriend had spent the night in the bedroom with him. Parker also said that he had two video game systems and was planning to sell one of the systems.

The State ultimately charged Parker with two counts of second degree child rape and one count of commercial sex abuse of a minor.

3

B.      CrR 3.5 Hearing

The trial court conducted a CrR 3.5 hearing before trial to determine the admissibility of Parker's statements to Kennison. Kennison testified at the hearing that Parker initially told him that he did not want to speak to law enforcement. Kennison detained Parker in his patrol vehicle. Kennison then spoke with Parker's sister in the apartment. After Kennison returned to his vehicle, Parker apologized and said that he would speak with the officer after all.

Kennison testified that he then read Parker his *Miranda* rights from a department-issued form but that he could not recall the exact words used because he did not have the form with him at the hearing. Kennison said he advised Parker that he had a right to remain silent, that he had a right to an attorney, that if he could not afford an attorney, one could be made available to him, and that anything he said could be used against him in court. Deputy Zachary Nielsen, another officer present at the scene, similarly testified that Kennison had read Parker his *Miranda* rights from a form. He reiterated the specific warnings Kennison had given Parker.

Parker's counsel argued that the officers' testimony was insufficient to establish that *Miranda* warnings had been properly given. The trial court verbally ruled that Parker's statements were admissible, but it did not enter written findings of fact and conclusions of law. After Parker filed his appeal in this matter, the trial court entered its written findings and conclusions. The written findings indicate that the trial court found Kennison properly advised Parker of his *Miranda* rights and Parker voluntarily spoke with the officers. The court concluded that Parker knowingly, intelligently, and voluntarily waived his right to remain silent and that his statements to Kennison were admissible.

4

C.      Trial

At trial, JZ testified about what happened as his account is described above. In contrast, Parker testified that his boyfriend was at the apartment with him and JZ on the night of the alleged incident. Parker said that he left JZ at the apartment for a short time while he and his boyfriend went to a store. Parker explained that when he returned to the apartment, he and his boyfriend played video games with JZ for a couple of hours before going to his bedroom to watch a movie. He and his boyfriend then went to his boyfriend's house, and Parker returned to the apartment around 6:00 a.m. Parker said that he saw JZ sleeping on the couch and that he went to sleep in his bedroom. Parker denied having any sexual contact with JZ.

Parker's sister testified that she left the party shortly after Parker. She said that JZ was the only person at the apartment when she arrived and that JZ told her Parker and his boyfriend went to a store. Parker's sister said that she knew Parker and his boyfriend returned to the apartment because she saw them all playing video games in the living room. She did not know whether they again left the apartment because she was studying for finals in her bedroom all night.

Kennison testified about what Parker told him when Kennison visited Parker's apartment. Kennison said that Parker denied any sexual contact with JZ. Parker acknowledged that JZ had spent the night, and that he was trying to sell a video game console, but he also told Kennison that his boyfriend, not JZ, was in his bedroom that night.

The jury returned verdicts finding Parker guilty of both counts of second degree child rape and not guilty of commercial sex abuse of a minor. Parker appeals from his convictions.

ANALYSIS

I. LATE ENTRY OF FINDINGS OF FACT AND CONCLUSIONS OF LAW

A trial court is required to enter written findings of fact and conclusions of law following a CrR 3.5 hearing on the admissibility of the defendant's statements at trial. CrR 3.5(c). But a trial court may enter its written findings and conclusions while an appeal is pending "'if the defendant is not prejudiced by the belated entry.'" *State v. Landsiedel*, 165 Wn. App. 886, 894, 269 P.3d 347 (2012) (quoting *State v. Cannon*, 130 Wn.2d 313, 329-30, 922 P.2d 1293 (1996)). The defendant bears the burden of proving prejudice, and we do not infer any prejudice from the delay alone. *State v. Head*, 136 Wn.2d 619, 625, 964 P.2d 1187 (1998). Thus, to demonstrate reversible error based on late entry of CrR 3.5 findings and conclusions, Parker must show that the findings and conclusions were tailored to the issues raised in his appeal or that he was otherwise prejudiced by the late entry. *State v. Quincy*, 122 Wn. App. 395, 398, 95 P.3d 353 (2004).

Parker does not meet this burden. The trial court's written findings and conclusions accurately reflect its oral ruling and do not appear tailored to the issues Parker raised in his appeal. Because Parker has not demonstrated any prejudice flowing from the late entry of CrR 3.5 written findings and conclusions, the issue is moot and the delay is not a grounds for relief.

II. ADMISSION OF STATEMENTS

Next, Parker contends that the trial court erred when admitting at trial the statements he made to law enforcement. Parker argues that Kennison provided incomplete *Miranda* warnings. Specifically, Parker contends that although he was advised of his right to an attorney, he was not told that he had the right to speak to an attorney before and during questioning or that he had the

right to stop answering questions at any time until he talked to an attorney. Parker argues that as a result, the trial court erred when it admitted the statements he made to Kennison.

The State concedes that it failed to present evidence at the CrR 3.5 hearing that Parker was provided with sufficient *Miranda* warnings but argues that the trial court's error in admitting his statements was harmless beyond a reasonable doubt. We accept the State's concession but conclude that any such error was harmless beyond a reasonable doubt.

We review de novo a trial court's conclusions regarding the adequacy of *Miranda* warnings. *State v. Mayer*, 184 Wn.2d 548, 555, 362 P.3d 745 (2015). The Fifth Amendment to the United States Constitution "provides that no person shall be compelled in any criminal case to be a witness against himself." *State v. Templeton*, 148 Wn.2d 193, 207, 59 P.3d 632 (2002) (internal quotation marks omitted).

The United States Supreme Court has held that law enforcement must fully explain Fifth Amendment protections to a suspect prior to questioning. *Miranda v. Arizona*, 384 U.S. 436, 444-45, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Our Supreme Court has characterized *Miranda* as requiring a four-part warning: "(1) he has the absolute right to remain silent, (2) anything that he says can be used against him, (3) he has the right to have counsel present *before and during questioning*, and (4) if he cannot afford counsel, one will be appointed for him." *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 434, 114 P.3d 607 (2005) (emphasis added), *abrogated in part on other grounds by Carey v. Musladin*, 549 U.S. 70, 127 S. Ct. 649, 166 L. Ed. 2d 482 (2006). In *Woods*, our Supreme Court simultaneously rejected the contention that a suspect must be specifically advised that they have a right to stop answering questions at any time until they talk to a lawyer. *Id.* at 434-35.

7

Although law enforcement is required to provide the warnings identified in *Miranda* prior to questioning a suspect in custody, "there is no requirement that the warnings be given in the precise language stated in *Miranda*." *Id.* at 434. Rather, in reviewing a challenge to the adequacy of *Miranda* warnings, we examine "'whether the warnings reasonably and effectively conveyed to a suspect his rights as required by *Miranda*.'" *Id.* (quoting *Duckworth v. Eagan*, 492 U.S. 195, 202-03, 109 S. Ct. 2875, 106 L. Ed. 2d 166 (1989)).

Regarding *Miranda*'s requirement that a suspect must be advised of their right to counsel, both the United States Supreme Court and the Washington Supreme Court have held that the advisement must reasonably convey that the right applies both prior to and during questioning. *See, e.g.*, *Florida v. Powell*, 559 U.S. 50, 130 S. Ct. 1195, 175 L. Ed. 2d 1009 (2010) (advisement that suspect had right to talk to a lawyer before answering questions together with advisement that suspect had right to use any of his rights at any time adequately conveyed the requirement that the right to consult with counsel applied before and during questioning); *Mayer*, 184 Wn.2d at 561-62, 566 (*Miranda* advisement deficient where officer conveyed that the suspect's right to appointed counsel applied to future events even though the officer had initially given the proper *Miranda* warnings).

Here, as the State concedes, evidence presented at the CrR 3.5 hearing showed that Parker was advised that he had a right to an attorney, but no evidence was presented showing he was advised that such a right applied prior to and during law enforcement questioning. Accordingly, we accept the State's concession that the *Miranda* warnings were insufficient and that the trial court erred by admitting the statements at trial.

8

The State argues, however, that the trial court's error in admitting Parker's statements at trial was harmless beyond a reasonable doubt. Improper admission of a defendant's statements despite inadequate *Miranda* warnings is an error that is subject to the constitutional harmless error test. *Mayer*, 184 Wn.2d at 566. We consider constitutional error harmless if the untainted evidence is overwhelming such that it leads to the same outcome. *Id.* This inquiry requires a finding of harmless error if, "in light of the entire trial record, we are convinced that the jury would have reached the same verdict absent the error." *State v. Romero-Ochoa*, 193 Wn.2d 341, 348, 440 P.3d 994 (2019). Under this test, we consider "the overall significance of the erroneously admitted or excluded evidence in this context (e.g., whether it was cumulative or corroborated, or consistent with the defense theory)." *Id.*

Here, the trial court admitted at trial Parker's statements that JZ spent the night at his apartment near the date of the alleged incidents, that his boyfriend also spent the night at his apartment on that date, that JZ did not go into his bedroom that night, that he did not have sexual contact with JZ, and that he owned two video game systems, one of which he planned to sell. The key issue at trial with respect to Parker's second degree child rape charges was whether Parker engaged in sexual contact with JZ.

Parker's statements to law enforcement were not inculpatory in that he denied JZ was in his bedroom and denied having sexual contact with JZ. Although Parker admitted that JZ spent the night at his apartment near the date of the alleged incidents, this fact was corroborated by every fact witness at trial, including Parker's sister. Finally, Parker's statement that he owned two video game systems, one of which he planned to sell, had no bearing on the key issue of whether he engaged in oral sexual intercourse with JZ. And, although Parker's statement regarding the video

9

game systems may have corroborated JZ's testimony that he was offered a video game system in exchange for sexual conduct, the jury ultimately acquitted Parker of commercial sex abuse of a minor.

We conclude that the error in admitting Parker's statements to Kennison did not contribute to the jury's verdicts of guilt as to his second degree child rape charges, and in light of the entire record, the jury would have reached the same verdict absent the error. We therefore hold that the error was harmless beyond a reasonable doubt. Accordingly, the trial court's error in admitting the statements was harmless.

We affirm Parker's second degree rape of a child convictions.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, C.J.

Melnick, J.