COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Beales and Russell
Argued by teleconference

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE WESLEY G. RUSSELL, JR.
v.        Record No. 1957-19-4                      APRIL 28, 2020

BRIAN DANIEL DELCID

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Grace Burke Carroll, Judge

Leanna C. Minix, Assistant Attorney General (Mark R. Herring,
Attorney General, on briefs), for appellant.

Amy M. Jordan, Senior Assistant Public Defender, for appellee.

Brian Daniel Delcid is charged with two counts of using a communications system to

solicit a minor in violation of Code § 18.2-374.3.  In the trial court, he moved to suppress

incriminating statements he made during an interview with a Fairfax County detective.  Finding

that the statements were obtained in violation of the protections provided for in Miranda v.

Arizona, 384 U.S. 436 (1966), the trial court suppressed the statements.

Pursuant to Code § 19.2-398(A)(2), the Commonwealth of Virginia appeals the trial

court's suppression ruling.  For the reasons that follow, we affirm the judgment of the trial court

and remand the matter to the trial court for further proceedings consistent with this opinion if the

Commonwealth be so advised.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

When reviewing a trial court's decision to grant a motion to suppress evidence, we view the facts in the light most favorable to the prevailing party below, granting that party all reasonable inferences fairly deducible from such a view of the evidence. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067 (1991). Accordingly, we state the evidence in the light most favorable to Delcid.

Delcid was arrested by the United States Marshals Service on the pending charges on January 23, 2019. On that day, Detective C.A. Rekas of the Fairfax County Police Department served Delcid with arrest warrants related to the charges.

After his arrest, Delcid was transported to Fairfax County Police Headquarters, placed in an interview room, and handcuffed to a chair. The law enforcement official who handcuffed Delcid to the chair gave Delcid some advice, commenting, "Good luck, you know what I'm saying. Don't fuck this up. Talk to my man [Rekas]."

Rekas then entered the room, asked Delcid some preliminary questions, and informed Delcid that he was under arrest. The entire interaction was recorded on video.

Before questioning Delcid further, Rekas gave Delcid a Miranda rights waiver form. The form provided the following warnings:

1. I have the right to remain silent.
2. Anything I say can and will be used against me in court.
3. I have the right to talk with a lawyer before answering any questions, and to have a lawyer with me during any questioning.
4. If I cannot afford a lawyer and want one, one will be provided for me.

The form concluded with the statement that "I know what my rights are. I understand and know what I am doing. No promises or threats have been made to me by anyone."

Having given Delcid the waiver form, Rekas asked Delcid, "Do you know what <u>Miranda</u> rights are?," and Delcid responded, "You have the right to remain silent." Rekas continued, "You know like in the movies and stuff like that. Um. I need to read those to you. Okay? I need to make sure you understand them, okay? So we're going to go, going to go through this line by line. Okay?"

As reflected on the video that was admitted into evidence during the suppression hearing below, the following discussion took place:

> Detective Rekas: These are your <u>Miranda</u> rights. Alright. It says on January 23, 2019, it's 12:11 p.m. We're at the Fairfax County Police Department. And that HQ is headquarters, alright? You're advised by me. I'm Detective Rekas of the Fairfax County Police Department. [T]he crime that I'm investigating here, Brian, is a use of a communications device to solicit a minor. Alright. That's what your two charges are for. Okay? Can you, are you right-handed or left-handed?
>
> Delcid: Righty.
>
> Rekas: Okay. Can you read this to me?
>
> Delcid: I have the right to remain silen[t].
>
> Rekas: You know what that means?
>
> Delcid: Stay quiet.
>
> Rekas: Alright. Do you understand that?
>
> Delcid: Yeah.
>
> Rekas: Okay. Do you have any questions regarding that?
>
> Delcid: No.
>
> Rekas: No. Okay. Can you read number two?
>
> Delcid: Anything I say can and will be used against me in court.
>
> Rekas: Do you understand that?

Delcid: (nods yes in video)

Rekas: Okay?  Do you have any questions regarding that?

Delcid: No.

Rekas: Okay.  Read number three for me.

Delcid: I have the right to talk with a lawyer before answering any questions, and to have a lawyer with me during any questioning.

Rekas: Alright do you understand that?

Delcid: I don't need a lawyer to speak to you.

Rekas: Okay. *And, this is more for court*.  It's not exactly right this second, but can you read the fourth one?

Delcid: If I cannot afford a lawyer and want one, . . . one will be provided for me.

Rekas: Okay.  Do you understand that?

Delcid: If I can't get a lawyer, the judge, the courthouse can appoint me one.

Rekas: Right.

(Emphasis added).

Delcid initialed next to each of the four numbered warnings, read aloud the portion of the form that reads, "I know what my rights are.  I understand and know what I am doing.  No promises or threats have been made to me by anyone[,]" and initialed that statement as well.  He also printed his name and affixed his signature in the place provided on the form.

Having discussed Delcid's rights under <u>Miranda</u>, Rekas asked, "Do you want to talk to me, Brian, about why you're here?"  Delcid answered affirmatively.  During the ensuing interrogation, Delcid made incriminating statements to Rekas.

Delcid filed a motion to suppress his statement to Rekas.  He asserted that, although he had signed the waiver form, the purported waiver was neither voluntary nor knowing and

intelligent.  In arguing that the waiver was not knowing and intelligent, Delcid emphasized that

he understood Rekas' statements that his right to appointed counsel was "more for court" and

was not to be exercised "right at this second" as limiting his right to appointed counsel to court

proceedings, and thus, represented an incorrect statement of Delcid's rights under Miranda.[1]  In

response, the Commonwealth argued that the totality of the circumstances, including the waiver

form, demonstrated that Delcid was aware of his rights, and therefore, his waiver of them was

valid.

The trial court held a hearing on Delcid's motion to suppress on November 22, 2019.

Rekas did not testify at the hearing, but the trial court viewed the video of his interrogation of

Delcid.  Delcid testified that he signed the Miranda form and acknowledged that he had initialed

the waiver form next to each warning.  He did not dispute that he had signed the form and

indicated that he understood his rights after Rekas had presented them to him.  Delcid

nevertheless further testified that he had felt pressured to sign the form and that Rekas' statement

that the fourth right on the form, the right to appointed counsel, was "more for court" led him to

believe he was not entitled to appointed counsel at that stage of the proceedings.

Characterizing the issue as a "very close call[,]" the trial court found that the evidence did

not establish that Delcid knowingly and intelligently waived his Miranda rights.  Specifically, the

trial court found that, in context, Rekas' statements that appointed counsel was "'more for

court'" and was not for "'exactly right this second'" conveyed that Delcid was not entitled to

---

[1] In both the trial court and on appeal, Delcid concedes that the written warnings he was
provided were an accurate statement of his rights.  Rather, he contended and continues to
maintain that Rekas' additional statements were incorrect and rendered the written warnings
infirm.

appointed counsel at questioning.[2]  Finding that this constituted "an inaccurate advising of [Delcid's] rights pursuant to Miranda[,]" the trial court granted Delcid's motion to suppress.

The Commonwealth now appeals.  The Commonwealth argues that the totality of the circumstances demonstrates that Delcid knowingly and intelligently waived his Miranda rights, and therefore, the trial court erred in granting Delcid's motion to suppress his statements to Rekas.

ANALYSIS

I. Miranda warnings

The Fifth Amendment to the United States Constitution provides, in pertinent part, that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself[.]"  The Sixth Amendment to the United States Constitution provides, in pertinent part, that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defen[s]e."  As applied to the instant case, the Fifth Amendment's protection against self-incrimination allowed Delcid to refuse to answer Rekas' questions during what was certainly a custodial interrogation, and the Sixth Amendment right to the assistance of counsel granted him the "right to the presence of an attorney, either retained or appointed[,]" Miranda, 384 U.S. at 444, during that interrogation.

These rights are subject to being waived, "provided the waiver is made voluntarily, knowingly and intelligently."  Id.  Concerned that the potentially coercive nature of a police-citizen encounter could undermine a person's ability to insist on these rights, the Miranda Court set out "prophylactic rules," New York v. Quarles, 467 U.S. 649, 653 (1984), to ensure

---

[2] In the trial court, Delcid contended that, in making his statements, Rekas "embellished" and "misrepresented" Delcid's rights under Miranda.  The trial court found that "embellish" was not "quite the right word," preferring to characterize Rekas' statements as "editorializ[ing]."

that any waiver was legitimate. The Miranda Court created what have become known as Miranda warnings, holding that "[p]rior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed[,]" during the questioning. Miranda, 384 U.S. at 444.

There is no question that, when questioned by Rekas, Delcid was subject to custodial interrogation. Accordingly, Rekas was required to provide Miranda warnings to Delcid before asking questions, and any responses that Delcid gave in response to Rekas' questions could be used against Delcid only if he "voluntarily, knowingly and intelligently," id., waived the rights the warnings are designed to protect.

## II. Standard of review

In arguing that Delcid waived his rights, the Commonwealth bore in the trial court the "heavy burden" of demonstrating that Delcid "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Id. at 475. Given that Delcid prevailed in the trial court, this burden is even heavier on appeal because we must view the evidence in the light most favorable to Delcid, granting him all reasonable inferences that flow from such a view of the evidence. Grimstead, 12 Va. App. at 1067. Moreover, in conducting our review, we are "bound by the trial court's findings of historical fact" that find support in the evidence. Kuhne v. Commonwealth, 61 Va. App. 79, 86 (2012).

Here, the trial court found that Delcid's waiver of his rights was not knowing and intelligent.[3] Unlike the question of whether a waiver was voluntary, which represents a question

---

[3] Because the trial court resolved the motion to suppress by finding that Delcid's waiver was not knowing and intelligent, it did not reach the question of whether the waiver was voluntary. Accordingly, we do not address that issue on appeal.

of law, Tirado v. Commonwealth, 296 Va. 15, 28 (2018), whether a waiver was knowing and intelligent "'is a question of fact,' and the [trial] court's determination on this issue 'will not be set aside on appeal unless plainly wrong,'" id. at 27-28 (quoting Angel v. Commonwealth, 281 Va. 248, 258 (2011)). In considering whether a waiver was knowing and intelligent, both the trial court as an initial matter and this Court on appeal must consider whether the warnings "in their totality, satisfied Miranda." Florida v. Powell, 559 U.S. 50, 61 (2010) (quoting Duckworth v. Eagan, 492 U.S. 195, 203-04 (1989)).

### III. Warnings given to Delcid

A review of the totality of the circumstances surrounding the Miranda warnings in this case begins with the written form that Rekas gave Delcid. The form accurately informed Delcid that he had the right to remain silent, that anything he said could be used against him in court, that he had the right to the presence of an attorney, and that, if he could not afford an attorney, one would be provided for him. As the trial court found and Delcid concedes, the written form accurately provided the warnings required by Miranda. See Miranda, 384 U.S. at 444.

Having been presented with the form, Delcid initialed and signed it, indicating that he had read and understood the rights. Furthermore, Delcid's verbal responses to Rekas indicated an understanding of the rights as presented and suggested a desire to speak with Rekas anyway. In short, if the written form and Delcid's statements were the only evidence to consider or if the trial court properly could have limited its review to just the form and Delcid's statements, the evidence would be sufficient to support a finding of waiver.

Of course, there was additional evidence to consider. As he was reviewing the rights contained on the form with Delcid, Rekas offered commentary that the trial court reasonably characterized as "editorializ[ing]." When the discussion of Delcid's rights reached the fourth right on the written form, Rekas offered what the trial court ultimately concluded was a

- 8 -

substantive comment. Specifically, regarding Delcid's right to have counsel appointed for him, Rekas said that the right was "more *for court*" and could not be utilized "exactly right this second"; the trial court concluded the additional statements conveyed to Delcid that appointed counsel was available only for court proceedings. (Emphasis added).

We cannot say the trial court's finding in this regard is "plainly wrong." Tirado, 296 Va. at 27-28 (quoting Angel, 281 Va. at 258). The word "for" as used by Rekas in his statement that the appointed counsel right was "for court" is routinely understood as a word of limitation. A popular online dictionary's first two entries for "for" are "with the object or purpose of" and "intended to belong to, or be used in connection with[.]"[4] Applying the plain and ordinary meaning of "for" in this context makes it clear that Rekas' statement indicated that the appointed counsel right had "the object or purpose of" court and that it was "intended to . . . be used in connection" with court. The trial court's conclusion that the phrase "for court" thus limited the right to appointed counsel to court proceedings is further supported by Rekas' comment that the right was not to be exercised "right this second." Finally, it finds support in Delcid's testimony, which we must credit, see Grimstead, 12 Va. App. at 1067, that Rekas' statement caused him to conclude that "if I had court in the long run that the [c]ourt would provide me a lawyer[.]"

The trial court's conclusion is fatal to the Commonwealth's claim that Delcid validly waived his Miranda rights. To carry its "heavy burden," Miranda, 384 U.S. at 475, that Delcid knowingly and intelligently waived his rights, the Commonwealth had to establish that the purported waiver was "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Tirado, 296 Va. at 28 (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). The trial court found that Rekas misinformed

---

[4] See Dictionary.com at https://www.dictionary.com/browse/for# (site last visited on April 27, 2020).

Delcid of his right to appointed counsel during questioning as opposed to in court, and therefore, concluded that Rekas prevented Delcid from having the necessary "full awareness" of the rights he purportedly waived. In the absence of such "full awareness," the trial court correctly found the purported waiver invalid, and thus, correctly concluded that "no evidence obtained as a result of interrogation c[ould] be used against" Delcid. Miranda, 384 U.S. at 479.

Characterizing Rekas' statement as an "alleged misadvisement[,]" the Commonwealth contends that Rekas' statements did not invalidate Delcid's purported waiver. The Commonwealth relies on Duckworth, 492 U.S. 195, and Spinner v. Commonwealth, 297 Va. 384 (2019), arguing that the United States Supreme Court and the Virginia Supreme Court "have affirmed similar language and rejected an argument almost identical to the one Delcid made[.]" We believe the Commonwealth overreads both decisions.

In Duckworth, the defendant, Eagan, was interviewed by police investigating crimes for which he was a suspect. Prior to questioning, the police provided Eagan a waiver form that they also read to him. The form contained the following language:

> "Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you've talked to a lawyer."

492 U.S. at 198 (emphasis and footnote omitted). After receiving these warnings, Eagan made incriminating statements to the police. The state trial court admitted those statements in evidence at Eagan's trial, Eagan was convicted, and the conviction was affirmed on direct appeal by the Indiana Supreme Court. Id. at 199.

- 10 -

Eagan sought federal habeas relief, which was denied by the district court. Id. at 199-200. The United States Court of Appeals for the Seventh Circuit reversed, finding

> that the advice that counsel would be appointed "if and when you go to court," . . . was "constitutionally defective because it denies an accused indigent a clear and unequivocal warning of the right to appointed counsel before any interrogation," and "link[s] an indigent's right to counsel before interrogation with a future event."

Id. at 200 (citation omitted). The United States Supreme Court reversed, finding that the warnings provided to Eagan "touched all of the bases required by Miranda." Id. at 203. It rejected the Seventh Circuit's conclusion that the statement that Eagan would receive an attorney "if and when you go to court" represented a substantive limitation on his rights, but rather, concluded that it simply was a truthful statement informing an accused "*when* he will obtain counsel." Id. at 203-04. In doing so, the Duckworth Court held that truthful statements about *when* counsel for an indigent will be appointed do not imply a limitation on an accused's entitlement to have appointed counsel present for questioning.

In Spinner, the Virginia Supreme Court applied the reasoning of Duckworth to a case on direct appeal. In that case, Spinner gave a statement to police after receiving warnings, which the investigating officer described as follows:

> "You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you're being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any question[s] and if you wish one. And I always caveat that with: 'If you're charged with a crime.' You can decide at any time to exercise any of these rights and stop answering questions or to stop answering-making any statements."

Spinner, 297 Va. at 389. Focusing on the officer's self-described "caveat" that a lawyer would be appointed for Spinner if he were charged with a crime, Spinner argued that the caveat

- 11 -

impermissibly "rendered the warning contingent, uncertain, ambiguous and confusing" and that, as a result, his subsequent statements to police should have been suppressed. Id. at 390.

Our Supreme Court disagreed. Applying the Duckworth rationale, it concluded that the officer's caveat "accurately describes the Virginia procedure for the appointment of counsel[,]" and thus, as in Duckworth, represented nothing more than a truthful statement about when and how counsel would be appointed. Id. at 394. Because it was a truthful statement about the appointment process, the Supreme Court declined to infer that the "caveat" implied a limitation on the substance of the right to appointed counsel and concluded that Spinner's waiver was valid so that his statements to law enforcement were properly admitted into evidence.

Properly understood, Duckworth and Spinner stand for the principle that truthful statements about the *process* for the appointment of counsel—the *how* and *when* of the appointment—do not suggest anything about the *substance* of the right to counsel during questioning. So long as a suspect is informed that he has the right to appointed counsel during questioning, as the defendants in Duckworth and Spinner were, truthfully telling him the process for obtaining that counsel does not invalidate a waiver.[5]

The Commonwealth argues that Rekas' statements here are no different from the procedural statements at issue in Duckworth and Spinner. If Rekas' statements merely had explained that any desired counsel could not be appointed "right this second[,]" the Commonwealth might have a valid point. However, as the trial court reasonably found, Rekas' statements strayed from timing and procedure when he said that the appointed counsel right was

_____

[5] Although the written warnings informed Delcid he had a right "to have a lawyer [present] during any questioning[,]" the trial court reasonably concluded that Rekas' statement misinformed Delcid, causing him to believe that he did not have a right to *appointed* counsel during questioning.

"more *for court*."[6]  As noted above, the plain meaning of this phrase is that it limits the purpose

of the right to appointed counsel to court proceedings as opposed to out-of-court events such as

questioning.  Thus, it is not the same as the procedural *how* and *when* statements at issue in

Duckworth and Spinner; it created a substantive limitation of the previously described general

right to counsel, literally informing Delcid that appointed counsel is "for court[,]" not

questioning.  Accordingly, the trial court did not err in concluding that Delcid was misinformed

about his rights, that his purported waiver was invalid, and that his statements to Rekas had to be

suppressed.

An additional significant difference between the instant case and Duckworth and Spinner

is the fact that Delcid prevailed below while the prosecution prevailed in the respective trial

courts in Duckworth and Spinner.  In admitting Eagan's statement to police, the state trial court

in Duckworth necessarily found that Eagan had knowingly and intentionally waived his Miranda

rights.[7]  As noted above, whether a waiver is knowing and intelligent represents "'a question of

---

[6] The Commonwealth suggests that the importance the trial court attached to Rekas' statement that the right as "for court" demonstrates that the trial court failed to consider the totality of the circumstances.  We disagree.  Considering the totality of the circumstances does not involve weighing the pieces of evidence against each other, but rather, requires considering each of the separate pieces as a part of the larger context.  Here, the trial court considered the written warnings and Delcid's responses to questions in light of what it reasonably concluded were Rekas' words of limitation that effectively reserved the previously described right to appointed counsel for court proceedings.  It is the Commonwealth's formulation, which elevates the written warnings and Delcid's responses and all but ignores Rekas' spoken limitation, that fails to consider the evidence in its totality.

[7] In Spinner, the trial court found that Spinner was not in custody during the relevant questioning, and therefore, Miranda did not apply.  Spinner, 297 Va. at 390.  Accordingly, the trial court did not consider whether the officer's warnings were sufficient.  This Court "assumed, without deciding, that he was in custody" for the relevant questioning and considered the sufficiency of the Miranda warnings provided to Spinner.  Id. at 392.  Although finding that Spinner was not in custody at the time of his initial questioning, id. at 392-93, the Supreme Court elected to address the sufficiency of the warnings Spinner was given.  Id. at 393.

fact,' and the [trial] court's determination on this issue 'will not be set aside on appeal unless plainly wrong.'" Tirado, 296 Va. at 27-28 (quoting Angel, 281 Va. at 258). Thus, the reviewing courts in Duckworth owed deference to the trial court's factual finding that Eagan's waiver was knowing and intelligent, while we owe deference to the trial court's factual finding that Delcid's waiver was not knowing and intelligent. Similarly, because the prosecution prevailed in the trial courts in both Duckworth and Spinner, the reviewing courts viewed the evidence in the light most favorable to the prosecution, granting to the State all inferences that flow from such a view of the evidence. Grimstead, 12 Va. App. at 1067. Because Delcid prevailed below, we take the opposite view of the evidence, viewing it in the light most favorable to Delcid and awarding him all inferences that flow from such a view of the evidence. Id.

Coupled with a proper understanding of Duckworth and Spinner, this view of the evidence precludes a conclusion that the trial court was "plainly wrong" in finding that Delcid did not knowingly and intelligently waive his rights. Tirado, 296 Va. at 27-28 (quoting Angel, 281 Va. at 258). Accordingly, the trial court did not err in granting Delcid's motion to suppress.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. We remand the case to the trial court for further proceedings consistent with this opinion if the Commonwealth be so advised.

Affirmed and remanded.