QUINCE, J.,
dissenting.
While I agree with Justice Pariente that the warnings in this case are distinguishable from those reviewed by the United States Supreme Court in Florida v. Powell; — U.S. -, 130 S.Ct. 1195, 175 L.Ed.2d 1009 (2010) [Powell II ], and that the warnings do not satisfy the requirements of the Fifth Amendment, I write separately because I believe that it is not necessary for this Court to reach the federal question to conclude that the warnings are deficient. “When called upon to decide matters of fundamental rights, Florida’s state courts are bound under federalist principles to give primacy to our state Constitution and to give independent legal import to every phrase and clause contained therein.” Traylor v. State, 596 So.2d 957, 962 (Fla.1992). Thus, “we examine the confessions initially under our state Constitution; only if they pass muster here need we re-examine them under federal law.” Id. at 961. Because the warnings in this case do not satisfy the requirements of the Florida Constitution, I respectfully dissent.
In Powell II, the Supreme Court acknowledged the primacy of state constitutional protections. Powell argued before the High Court that our decision in State v. Powell, 998 So.2d 531 (Fla.2008) [Powell I ], rested on the Florida Constitution, and asserted that regardless of the requirements of federal law, “state courts are absolutely free to interpret state constitutional provisions to accord greater protection to individual rights than do similar provisions of the United States Constitution.” Powell II, 130 S.Ct. at 1203 (quoting Arizona v. Evans, 514 U.S. 1, 8, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995)). The Supreme Court agreed, stating: “Powell is right in this regard. Nothing in our decision today, we emphasize, trenches on the Florida Supreme Court’s authority to impose, based on the State’s Constitution, any additional protections against coerced confessions it deems appropriate.” Id.; see also Oregon v. Hass, 420 U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975) (“[A] State is free as a matter of its own law to impose greater restrictions on police activity than those this Court holds to be necessary upon federal constitutional standards.”).
The High Court decided that it was free to address the federal question, however, based on its finding that Powell I did not contain a “clear statement” that the warnings were defective under independent and adequate state law grounds. See Powell II, 130 S.Ct. at 1201-03 (discussing Michigan v. Long, 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983)); but see Powell I, 998 So.2d at 542 (“Both Miranda and article I, section 9 of the Florida Constitution require that a suspect be clearly informed of the right to have a lawyer present during questioning.”). The Court next held that the warnings given to Powell did not violate the Fifth Amendment and, therefore, reversed our decision in Powell I. Powell II, 130 S.Ct. at 1204-05; Additionally, because our holding in Rigterink v. State, 2 So.3d 221 (Fla.2009) [Rigterink I ], was based on Powell I, the Supreme Court similarly vacated our decision in Rigterink I and remanded Rigterink’s case to this Court “for further consideration in light of [Powell II ].” Florida v. Rigterink, — U.S. -, 130 S.Ct. 1235, 176 L.Ed.2d 175 (2010) [Rigterink II ].
On remand, it is our obligation to first determine whether the warnings that were given to Rigterink satisfied the requirements of article I, section 9 of the Florida Constitution; only if the warnings are suf *904 ficient under the Florida Constitution do we need to determine whether the warnings violated any requirement of federal law. See Traylor, 596 So.2d at 961. In conducting this review, this Court is not bound by the rulings of the United States Supreme Court concerning the scope and requirements of the Fifth Amendment. We have recognized in prior cases that the privilege granted by the Self-Incrimination Clause of the Florida Constitution, although based in part on “the experience under Miranda and its progeny,” id. at 965, is a privilege that exists independently of the protections granted by the federal Constitution. In Traylor, we observed that “[a]s early as 1896, this Court recognized that our common law principles governing confessions are subsumed under the [Florida Constitution’s] proscription concerning compelled self-incrimination.” Id. at 964.
Further, as we acknowledged in Rigter-ink I, while “[t]his Court has generally followed federal Fifth Amendment precedent in interpreting article I, section 9 of the Florida Constitution[,] ... unlike article I, sections 12 (‘Searches and seizures’) and 17 (‘Excessive punishments’), section 9 does not contain a proviso that we must follow federal precedent with regard to the right against self-incrimination.” 2 So.3d at 241 (some emphasis added). “Thus, in this context, the federal Constitution sets the floor, not the ceiling, and this Court retains the ability to interpret the right against self-incrimination afforded by the Florida Constitution more broadly than that afforded by its federal counterpart.” Id. Indeed, this Court has previously held that the Florida Constitution prohibits the use of certain impeachment evidence that is not barred by the Fifth Amendment. See State v. Hoggins, 718 So.2d 761, 769-70 (Fla.1998) (holding that the use of post-arrest, pre-Miranda silence to impeach a defendant’s testimony at trial violates Florida’s privilege against self-incrimination); cf. Fletcher v. Weir, 455 U.S. 603, 606, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (holding that the use of post-arrest, pre-Miranda silence for impeachment purposes does not violate the federal Constitution).
In Traylor, this Court set out the specific pre-interrogation warnings that are required by the Florida Constitution:
[T]o ensure the voluntariness of confessions, the Self-Incrimination Clause of Article I, Section 9, Florida Constitution, requires that prior to custodial interrogation in Florida suspects must be told that they have a right to remain silent, that anything they say will be used against them in court, that they have a right to a lawyer’s help, and that if they cannot pay for a lawyer one will be appointed to help them.
596 So.2d at 965-66 (footnote omitted). In an accompanying footnote, we clarified that the “right to a lawyer’s help,” id. at 966, “means that the suspect has the right to consult with a lawyer before being interrogated and to have the lawyer present during inte'nvgation.” Id. at 966 n. 13 (emphasis added).
This final warning was clearly absent in this case. In the warnings that were given by the Polk County Sheriffs Office, Rig-terink was informed only that he had the right to have counsel present prior to questioning. There was no statement informing him that he had the right have an attorney with him in the room during the interrogation. Moreover, because the warnings did not include the catch-all statement that was given to Powell, this Court errs in relying on the reasoning of Powell II to conclude that the right to have an attorney present during the interrogation was implicit in the warning. See Powell II, 130 S.Ct. at 1205 (“In combination, the two waimings reasonably conveyed Powell’s right to have an attorney *905 present, not only at the outset of interrogation, but at all times”) (emphasis added). Accordingly, the warnings did not contain a piece of crucial information that is required by the Florida Constitution. Since we determined in Rigterink I that the appellant was in custody when the warnings were given and that the admission and publication of the videotaped confession was harmful error, the correct result in this case is to reinstate our reversal of the convictions and sentences and to remand for a new trial.
PARIENTE and PERRY, JJ., concur.